# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARTER P. and SARAH REESE** | : | **CIVIL ACTION** |
| **(HUSBAND AND WIFE),** | : | |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | **NO. 14-5715** |
| | : | |
| **POOK & POOK, LLC,**[1] **et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                   **December  19, 2017**

This is an action for damages and injunctive relief brought by husband and wife

Carter and Sarah Reese against several defendants alleging various state law claims

stemming from the auction of part of the Reeses' antique toy collection.  The Pook[2]

Defendants have filed a motion to dismiss pursuant to Rules 12(b)(1) of the Federal Rules

of Civil Procedure, claiming that this court has no jurisdiction over these state claims

---

[1]  The second amended complaint indicates that Pook & Pook is a limited liability company.  A check of the website of the Pennsylvania Secretary of State Corporate Filings reveals that Pook & Pook is actually an incorporated entity.  Its Articles of Incorporation were filed on March 4, 1985.  See https://www.corporations.pa.gov/Search/CorpSearch.

[2]  The Pook Defendants include the Chester County-based firm of Pook & Pook, Inc.; Ron Pook, a founder and principal of Pook & Pook; Debra Pook, a co-founder, principal, and President of Pook & Pook, and wife of Ron Pook; and James Pook, a Vice-President of Pook & Pook, and Ron Pook's son.  See Second Am.Compl. ¶¶ 12, 13, 16, 17, and 18.  The remaining defendants include Connie & Jay Lowe Antiques, a Lancaster-based sole proprietorship run and managed by Jay Lowe and his wife, and engaged in the purchase and resale of antiques, id. at ¶ 27; Jay Lowe, the co-owner of Connie & Jay Lowe Antiques, who is engaged in multiple facets of the antique industry, id. at ¶¶ 23 and 27, and well known for recasting old toys, id. at ¶ 26; and Mike Caffarella, described in the second amended complaint as a "sixty-something close associate and business partner of Jay Lowe in the buying and selling of old toys and other antiques," id. at ¶ 19.  These remaining defendants have filed an Answer to the second amended complaint.  See Documents #92 and 94.

because there is no diversity of citizenship among the parties.  The motion is also brought

pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The plaintiffs have filed a response in opposition.  For the following reasons, I will grant

the motion in part and deny it in part.

## I.  BACKGROUND

Mr. and Mrs. Reese collect antique toys, and have done so for over forty-five

years.  On October 2, 2012, they filed for Chapter 11 bankruptcy in this district.  During

the bankruptcy proceedings, the Reeses were required to sell a portion of their massive

antique toy collection, i.e., twenty-four hundred items.  Defendant Pook & Pook, Inc.,

became the bankruptcy court-approved auctioneer to sell the antique toys at auction.  The

Reeses and Pook & Pook entered into an agreement for the sale of the toys.  The terms of

the agreement are attached to the second amended complaint.[3]  See Second Am.Compl.,

Exhibit C at 31-36.  None of the individual Pook Defendants were parties to this

agreement.  Pursuant to the agreement, Pook & Pook was to receive a 5% commission

from the plaintiffs for all sales of the auctioned items up to a total of $1,800,000 in sale

proceeds.  Pook & Pook was also entitled to charge and retain a buyers' commission of

---

[3]  The only contract involved in this action appears to be a document entitled "Term Sheet."  The
document purports to be the agreement between the Reeses and Pook & Pook, and provides basic
terms concerning the removal of the items for auction from the Reeses' Berks County residence,
periodic monetary advances to be made to the Reeses, the order of priority in which the proceeds
of the sale should be made, the required authorizations from the bankruptcy court, and the
commission available to Pook & Pook.  See Exhibit C of Second Am.Compl. at 31-35.  The
agreement imposes no explicit level of care on Pook & Pook in carrying out the auction of the
toys, with the exception of the final paragraph which vaguely provides, "Except as otherwise
provided in this term sheet, the sale of the Auction Items will be conducted according to the
standard terms and conditions of [Pook & Pook] for such sales."  Id. at ¶ 14.  After a thorough
review of the record, I find no other mention of these standard terms and conditions.

18½%.  The auctioned items were to be conducted on such dates and times as Pook &

Pook, in its discretion, determined to be appropriate.  Except as otherwise provided in the

agreement, the sale of the auction items was to be conducted according to the standard

terms and conditions of Pook & Pook for such sales.  The bankruptcy court approved the

agreement by Order dated May 28, 2013.

The toy auction took place on September 6-7, 2013, and resulted in sales of

approximately $560,000, which, according to the Reeses, was an amount far lower than

expected.  The Chapter 11 Reorganization Plan was confirmed on October 10, 2013.  On

October 7, 2014, the plaintiffs filed a civil action in this court against the named

defendants here, and others.  I dismissed that action against the Pook Defendants for lack

of subject matter jurisdiction pursuant to the Barton doctrine.[4]

In carrying out the toy sale pursuant to the agreement, Pook & Pook retained

Defendants Jay Lowe and Mike Caffarella as toy experts to assist in the sale.  The Reeses

allege that the auction was not carried out in a manner to achieve the sales that it

otherwise could have achieved.  Some of the set-up and display consisted of unmatched

parts, which the plaintiffs allege, resulted in an inadequate presentation of the toys at the

auction.  This presentation was allegedly a ploy for Mr. Lowe enabling him to purchase

items from the auction for himself at a lower price.

---

[4] The Barton doctrine, established by the United States Supreme Court in 1881, provides that
"before a lawsuit is brought against a receiver, leave of court by which he was appointed must be
obtained."  Barton v. Barbour, 104 U.S. 126, 128 (1881).  Here, I applied the doctrine and found
that because the Reeses had failed to request leave from the bankruptcy court to file this action, I
had no jurisdiction to review their claims.  Reese v. Pook & Pook, 158 F.Supp.3d 271, 285 (E.D.
Pa. 2016).

The Reeses also allege that in selecting one of the their own toys for the front cover of the auction catalogue, the "Carpenter Burning Building," which Mr. Lowe had originally sold to the plaintiffs, Mr. Lowe was promoting the future sales of his remaining Burning Building toys in his inventory. The plaintiffs also feel that placing this toy on the cover sent a negative message to the auction goers about what was in the catalogue.

Consequently, in their second amended complaint, the Reeses bring claims for Civil Conspiracy/Combination in Count I, breach of fiduciary duty/responsibility in Count II, negligence in Count III, breach of the contractual duty of good faith and fair dealing, and dishonesty in fact in Count IV, and unjust enrichment in Count V.

## II. LEGAL STANDARD

The Pook & Pook defendants move to dismiss the plaintiffs' second amended complaint against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Lack of Subject Matter Jurisdiction

Challenges to subject matter jurisdiction can be made at any time. Fed.R.Civ.P. 12(h)(3). In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), there is a crucial distinction between "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction, and the court must consider the

allegations in the complaint as true." Smolow v. Hafer, 353 F.Supp.2d 561, 566 (E.D. Pa. 2005). A 12(b)(1) motion making a factual attack asserts that "there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). In other words, a facial attack "contests the sufficiency of the pleadings," In re Schering-Plough Corp., 678 F.3d 235, 243 (3d Cir. 2012), "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). For both the facial and factual attack, the plaintiff bears the burden of proving jurisdiction. Smolow, 353 F.Supp.2d at 566.

**B. Failure to State a Claim Upon Which Relief Can be Granted**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell At. Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). Therefore, when presented with a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis. First, the factual and legal elements of a claim are separated. The

court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions.  Iqbal, 556 U.S. at 679.  Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  Id.; see also Phillips, 515 F.3d at 234-235.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

## III. DISCUSSION

### A. The Court's Jurisdiction

First, the Pook Defendants seek the dismissal of this second amended complaint arguing that this court lacks subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331[5] and 1332(a).[6] They maintain that no federal claims are presented, there is no federal question, and the parties are not diverse. In fact, all parties are citizens of the Commonwealth of Pennsylvania. The defendants also argue that this court should decline to exercise supplemental jurisdiction over the Reeses' state-law claims. The plaintiffs insist that 28 U.S.C. § 1334(b) provides this court with jurisdiction. I agree.

Title 28 of the United States Code, Section 1334(b) confers upon district courts "original and exclusive jurisdiction of all cases under Title 11," and "original but not exclusive jurisdiction of all civil proceedings *arising under* Title 11, or *arising in* or *related to* cases under Title 11." (Emphasis added). Matters "arising under Title 11" for purposes of 28 U.S.C. § 1334(b) are those in which "a claim is made under a provision of Title 11." See Samson Res. Co. v. J. Aron & Co. (In re Semcrude, L.P.), 2010 Bankr. LEXIS 4567, *15 (Bankr. D.Del., December 13, 2010). In other words, the "cause of action is created by Title 11." Id. Matters "arising in" a bankruptcy case are typically "administrative matters that arise only in bankruptcy cases." Id. at *16 (citing In re

---

[5] Title 28 of the United States Code, Section 1331 provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[6] Title 28 of the United States Code, Section 1332(a) provides, in pertinent part, that the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between . . . citizens of different States.

Eastport Assocs., 935 F.2d 1071, 1076 (9th Cir. 1991). Finally, proceedings "related to" a case under Title 11 are those whose outcome "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984, 994 (3d Cir. 1984) (overruled on other grounds).

In my Memorandum dated January 27, 2016, which granted the Pook Defendants' motion to dismiss pursuant to the Barton doctrine, I found that the Reeses' claims in their first amended complaint against the Pook Defendants fell within the "arising in a case under" category of bankruptcy jurisdiction. All of those claims against the Pook Defendants, as the ones here, arose from their involvement in the auction of the Reeses' toy collection, as ordered by the bankruptcy court. See Reese v. Pook & Pook, 158 F.Supp.3d 271, 285 (E.D. Pa. 2016). Those claims, as the ones here, arose out of the disposition of property of an estate, as opposed to non-estate property of the bankruptcy petitioners. Id. If the auction was tainted, it was the bankruptcy estate that suffered since the auction proceeds that were allegedly diminished by the defendants' actions were the property of the estate to be used to pay creditors. Id. I also found that those claims, which concerned how the estate was administered, qualified as both "arising under" the Code and "arising in" a bankruptcy case under 28 U.S.C. § 1334(b). Id. The same analysis still applies to the current claims against the Pook Defendants in the Reeses' "Amended Complaint Pursuant to the Court's Order of 16 February 2017." Accordingly, I find that 28 U.S.C. § 1334(b) provides this court with subject matter jurisdiction, and that this case is properly before me. I will deny the defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B.  Equitable Tolling

Next, in arguing that this action should be dismissed for failure to state a claim pursuant to Rule 12(b)(6), the defendants contend that the claims of civil conspiracy (Count I), breach of fiduciary duty (Count II), and negligence (Count III) are barred by a two-year statute of limitations.  See 42 Pa.C.S.A. § 5524.  The statute of limitations begins to run from the time the cause of action accrues.  See 42 Pa.C.S.A. § 5502(a).  A cause of action accrues when the injury is inflicted.  Wilson v. El-Daief, 964 A.2d 354 (Pa. 2009).  Thus, the defendants argue, when this second amended complaint was filed on February 22, 2017, the statute of limitations had run because the toy auction occurred on September 6 and 7, 2013.  They argue that the second amended complaint must be dismissed as untimely because it cannot refer back to the original complaint under these circumstances.  I do not agree.

The Reeses argue that equitable tolling should be applied to their claims.  Because the statute of limitations for these claims is not jurisdictional, a court may permit equitable tolling of the time limit, but equitable tolling "should be applied 'sparingly.'" Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).  There are three principal situations in which equitable tolling may be applied to the Reeses' state claims: (1) where a defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d

Cir. 1994); see also Grant v. Sec'y U.S. Dep't of Homeland Sec., 2017 U.S. App. LEXIS 15502, *7 (3d Cir. 2017). The Reeses argue that equitable tolling should be applied based on the third of these situations because they timely asserted their rights mistakenly in the wrong forum. I agree.

The Third Circuit Court of Appeals has determined that the benefit of tolling is meant for those who have "exercised reasonable diligence in investigating and bringing [their] claims." Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618-619 (3d Cir. 1998). The Reeses have exercised such diligence. They first filed these claims against the Pook Defendants in this court on October 7, 2014, well within the statute of limitations for such state law claims. A few short months later, the plaintiffs filed their first amended complaint. I determined that the claims against the Pook Defendants were not properly before me, and I dismissed them because the Reeses had failed to secure leave of the bankruptcy court before instituting them. Shortly thereafter, the Reeses filed an adversary complaint in the bankruptcy court. The bankruptcy court granted the Reeses permission to file the claims against the Pook Defendants in any other court. Once permission was secured, the Reeses returned to this court and filed this second amended complaint. Thus, the Reeses had timely asserted their rights mistakenly in the wrong forum. Because the Reeses qualify for equitable tolling of the statute of limitations, I find that their claims against the Pook Defendants are not time-barred.

## C. Civil Conspiracy -- Count I

The defendants argue that the second amended complaint fails to plead the necessary factual allegations to support a claim of civil conspiracy against the Pook

Defendants. Specifically, they argue that the Reeses' attempt to state a claim for civil conspiracy fails because the second amended complaint does not allege: (1) a single overt act on the part of any of the Pook Defendants in furtherance of the purported conspiracy; or (2) that the Pook Defendants acted with malice.[7]

In Pennsylvania, a claim of civil conspiracy contains the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. 2004); see also Giordano v. Claudio, 714 F.Supp.2d 508, 534 (E.D. Pa. 2010). An "'actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.'" Levin v. Upper Makefield Twp., 90 F.App'x 653, 667 (3d Cir. 2004) (quoting In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999)). Ultimately, "only a finding that the underlying tort has occurred will support a claim for civil conspiracy." Alpart v. Gen. Land Partners, Inc., 574 F.Supp.2d 491, 506 (E.D. Pa. 2008) (quotation omitted); see also Duffy v. Lawyers Title Ins. Co., 972 F.Supp.2d 683, 698 (E.D. Pa. 2013) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.")

To allege a plausible claim of civil conspiracy, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the

---

[7] The defendants' third argument, i.e., that the conspiracy claim also fails because the second amended complaint lacks a necessary predicate claim, is premature.

defendants [or co-conspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (citation and internal quotation marks omitted).  It is not enough that the "end result of the parties' independent conduct caused a plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Id.  Additionally, to prevail on a civil conspiracy claim, a plaintiff must prove malice, or "'that the sole purpose of the conspiracy was to injure the plaintiffs.'" Morilus v. Countrywide Home Loans, Inc., 651 F.Supp.2d 292, 313 (E.D. Pa. 2008)) (internal quotations omitted).  A showing that an alleged conspirator acted for professional or business benefit will preclude a finding of malice. Bro-Tech Corp. v. Thermax, Inc., 651 F.Supp.2d 378, 419 (E.D. Pa. 2009).

In the second amended complaint, the Reeses allege that, "Pook as **principal**, Caffarella as Pook's **agent**, and Lowe combined or agreed with **intent to do an unlawful act**, or to do an otherwise lawful act by unlawful means in the manner described above." See Second Am.Compl. ¶ 109 (emphasis added).  Besides reciting the elements of a claim for civil conspiracy, the second amended complaint contains no mention of an *overt* act done by the Pook Defendants in pursuance of a common purpose.  There are, in contrast, more than sufficient allegations of overt acts performed by Co-Defendants Lowe and Caffarella.  The Reeses assert that Mr. Lowe and Mr. Caffarella improperly set up the display at the auction to permit their own below-value purchases of toys.  They allegedly mixed unmatched parts of multi-part toys in different lots, reducing the likelihood that other bidders, particularly phone and internet bidders, would perceive the true value of the lots.  They are also alleged to have bid on lots using that inside information, in order

to later rematch the parts and create toys of greater value that they could then sell at their own retail stand. These allegations of overt acts are sufficient, if proven, to show concerted action between them, their common purpose, and an intent to injure. See Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979) (citing Miller v. Post Publ'g Co., 110 A. 265 (Pa. 1920) ("Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy.")

At this stage of the proceedings, the relationship among the Pook Defendants, Mr. Lowe, and Mr. Caffarella is unclear. The second amended complaint alleges that Defendant James Pook informed Plaintiff Carter Reese that he was going to use a pair of "toy experts" to assist in the auction of the Reeses' toy collection. See Second Am.Compl. ¶ 49. Mr. Reese then confirmed that Mr. Lowe and Mr. Caffarella were the toy experts. The second amended complaint also asserts that Mr. "Caffarella, in combination with Lowe, was Pook & Pook's agent relative to the sale of certain items from the Reeses' collection of antique toys." Id. at ¶ 22.

While I agree with the basic premise of this argument, i.e., there are no allegations of an overt act on the part of the Pook Defendants, I will allow this claim to proceed to discovery to explore whether the relationship among the Pook Defendants and their co-defendants could have triggered liability based on an agency relationship. Thus, I will deny the motion to dismiss Count I.

### D. Count IV – Breach of Contract

In Count IV, the Reeses allege a breach of contract, presumably the undated document entitled "Term Sheet" attached to the second amended complaint. Specifically,

the Reeses split the claim into two sub-claims, i.e., one for good faith, fair dealing; and a second for dishonesty in fact. The Pook Defendants argue for the dismissal of these sub-claims because the second amended complaint fails to allege the breach of a specific duty imposed by the agreement. In addition, they argue that the dishonesty in fact sub-claim must also be dismissed because it is barred by the parol evidence rule.

To establish a cause of action for breach of contract, plaintiffs must plead: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. 1999). "Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing." Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F.Supp. 2d 394, 400-01 (E.D. Pa. 2002).

### 1. Good Faith, Fair Dealing

First, I note that the breach of contract claim was brought against Pook & Pook and the individual Pook defendants. See Second Am.Compl. ¶¶ 119-122. Because the individual Pook defendants were not parties to the contract, I will grant the motion to dismiss them from Count IV. See Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa.Super. 1991) (It is basic contract law that only a party to a contract can be liable for breach of that contract).

Second, in breach of contract cases, Pennsylvania courts have applied the Restatement (Second) of Contracts § 205, which provides that, "Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." See Baker v. Lafayette College, 504 A.2d 247, 255 (Pa.Super. 1986)

(holding that where the defendant expressly provided in an employment contract for a comprehensive evaluation and review process, it had a limited duty to conduct that evaluation in good faith). In <u>Baker</u>, the Superior Court noted that the defendant's obligation to act in good faith extended to the performance of the duties it assumed under the contract and found this consistent with the general duty of contracting parties to perform their contractual obligations in good faith as set forth in the Restatement (Second) of Contracts § 205. <u>Id.</u> I note, though, that a breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of good faith. <u>LSI Title Agency, Inc. v. Evaluation Servs.</u>, 951 A.2d 384, 391 (Pa.Super. 2008). The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties. <u>Hanaway v. Parkesburg Grp., LP</u>, 132 A.3d 461, 471 (Pa.Super. 2015). In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations. <u>Id.</u> at 471-472. In determining whether there has been a breach of contract, courts evaluate the conduct of a party through the lens of good faith and fair dealing. <u>Id.</u> at 472. Good faith has been defined as "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness, or reasonableness." <u>See</u> Restatement (Second) of Contracts § 205, Comment a.

The contract at issue here is the Term Sheet attached to the second amended complaint, which outlines terms for the "retention of Pook & Pook, Inc., to provide

auction services to the Chapter 11 Bankruptcy Estate of Carter Reese and Sarah Reese." See Second Am.Compl., Exhibit C at 32. The terms include the removal of the items for auction from the Reeses' Berks County residence, periodic monetary advances to be made to the Reeses, the order of priority in which the proceeds of the sale should be made, the required authorizations from the bankruptcy court, and the commission available to Pook & Pook. A careful review of the second amended complaint reveals no allegation that any of the explicit duties imposed by this agreement were breached.

Nevertheless, the plaintiffs contend that "the defendants breached their duty of good faith and fair dealing to the Reeses in multiple ways." See Second Am.Compl. ¶ 122. The Reeses state that "a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Id. at ¶ 121. It is unclear from the second amended complaint whether Pook & Pook is alleged to have participated in some or all of these examples of bad faith. Nevertheless, there are many allegations throughout the second amended complaint which would support a finding of a lack of diligence and slacking off on the part of Pook & Pook in the manner in which the auction was conducted. As the auctioneer and party to the agreement, Pook & Pook had an implied duty of good faith and fair dealing, including retaining control of the auction presumably in such a way as to garner the highest financial return for the Reeses. Instead, it is alleged that there was rampant disorganization at the auction, an extensive lack of

preparation, and widespread incompetence in setting up the various displays of toys. Such conduct could have shown an inconsistency with the justified expectations of the Reeses, and resulted in a diminishing of the value of the toys at the auction. Accordingly, I will permit this sub-claim to proceed through discovery, and deny Pook & Pook's motion to dismiss.

### 2. Dishonesty in Fact

The Reeses allege that a "similar requirement to the general duty of good faith and fair dealing found in Restatement (Second) of Contracts § 205 has been imposed upon contracts within the Uniform Commercial Code by 13 Pa.C.S. § 1203." See Second Am.Compl. ¶ 124. The duty of good faith has been defined in the U.C.C. as "honesty in fact in the conduct or transaction concerned." See 13 Pa.C.S. § 1201; see also Cable & Associates Ins. Agency v. Commercial Nat'l Bank of Pennsylvania, 875 A.2d 361, 364 (Pa.Super. 2005) (quoting Gorski v. Smith, 812 A.2d 683, 710 (Pa.Super. 2003)). Again, with no specific examples provided, the Reeses allege that Defendant Pook & Pook has been dishonest in fact. See Second Am.Compl. ¶ 126. After a careful reading of the second amended complaint, however, I can find no allegation that Pook & Pook breached its duty of honesty in fact during the contract. Thus, I will dismiss this sub-claim alleging Pook & Pook's dishonesty in fact.[8]

### E. Gist of the Action Doctrine

The Pook Defendants argue that the negligence claim in Count III of the second amended complaint must be dismissed because it is barred by the gist of the action

---

[8] A discussion of Pook & Pook's argument based on the parol evidence rule is unnecessary.

doctrine. The gist of the action doctrine applies to tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." Hart v. Arnold, 884 A.2d 316, 340 (Pa.Super. 2005). The principle underlying the doctrine is that a tort action derives from "the breach of duties imposed as a matter of social policy," whereas a breach of contract action stems from "the breach of duties imposed by mutual consensus." Redevelopment Auth. of Cambria Cnty. v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. 1996). In essence, the gist of the action test "requires the court to focus on the substance of the dispute, or more colloquially, to ask the question, 'What's the case really about?'" Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010). The gist of the action doctrine precludes plaintiffs from "recasting ordinary breach of contract claims into tort claims" and maintains the "conceptual distinction between breach of contract claims and tort claims." Id. at 548. I note that this doctrine has yet to be expressly adopted by the Supreme Court of Pennsylvania; however, the Third Circuit and the Superior Court of Pennsylvania have operated under the assumption that the Commonwealth's highest court will eventually do so. Id.; see also Reardon v. Allegheny Coll., 926 A.2d 477, 486 (Pa.Super. 2007).

### 1. Count III -- Negligence

Count III of the second amended complaint alleges, "As demonstrated above, in the best light, Defendants have breached duties owed the Reeses and, as a result, the

Reeses have been injured, suffering actual damages."  See Second Am.Compl. ¶ 118.

The Pook Defendants argue that this claim of negligence against them must fail because

the Reeses cannot state a tort claim in negligence where all the duties between the parties

were contractual.

There is little doubt that the Reeses' negligence claim against Pook & Pook is a

repackaged breach of contract claim, resting squarely upon the allegation that Pook &

Pook breached its duty of good faith and fair dealing under the contract.  The duties

allegedly breached by Pook & Pook arise from the terms of the contract, not social

policy, and the success of this negligence claim is dependent entirely upon the terms of

the contract.  Based upon the gist of the action doctrine, the claim of negligence and the

claim of breach of contract against Pook & Pook cannot coexist in this situation.

However, the same cannot be said about the individual Pook Defendants who were not

parties to this contract.  I will permit the Reeses' claim of negligence against the

individual Pook Defendants to proceed through discovery in an effort to determine

whether these corporate officers may be held individually liable for participating in

alleged tortious activity.[9]  See McGovern v. Jack D'S, Inc., No. 03-5547, 2004 U.S. Dist.

LEXIS 1985, *5 (E.D. Pa. 2004).  Accordingly, I will grant the motion to dismiss Count

---

[9]  The Pook Defendants' reliance on the economic loss doctrine is misplaced under these
circumstances.  That doctrine "prohibits plaintiffs from recovering in tort economic losses to
which their entitlement flows only from a contract."  Werwinski v. Ford Motor Co., 286 F.3d
661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604,
618 (3d Cir. 1995)).  As discussed above, the individual Pook Defendants were not parties to the
contract in this action.  Accordingly, the economic loss doctrine can provide them no relief.

III against the corporation only as a party to the contract, and deny it as against the individual Pook Defendants.

### 2. Count II – Breach of Fiduciary Duty

In Count II, the Reeses allege that their relationship with the Pook Defendants was a confidential one which triggered various fiduciary duties owed by the Pook Defendants to the Reeses. Claims for breach of contract and breach of fiduciary duty may coexist "if the fiduciary duty is based on duties imposed as a matter of social policy and if the fiduciary duty is not based on a contractual agreement between the parties." Alpart v. General Land Partners, Inc., 574 F.Supp.2d 491, 499 (E.D. Pa. 2008); see also Bohler-Uddeholm America, Inc., 247 F.3d at 105 (affirming decision to submit both breach of contract and breach of fiduciary duty claims to a jury because the "fiduciary duty claim [was] imposed as a matter of social policy rather than by mutual consensus.")

Initially, I note that although a breach of fiduciary duty is also a tort which could be barred by the gist of the action doctrine, the Pook Defendants instead argue that Count II should be dismissed because the Reeses have failed to state a claim upon which relief can be granted. To allege a breach of fiduciary duty, the Reeses must first assert that a fiduciary or confidential relationship existed between themselves and the Pook Defendants. Baker v. Family Credit Counseling Corp., 440 F.Supp.2d 392, 414 (E.D. Pa. 2006) (citing Harold v. McGann, 406 F.Supp.2d 562, 571 (E.D. Pa. 2005). "Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act

in good faith for the other's interest." Id. (quoting Silver v. Silver, 219 A.2d 659, 662 (Pa. 1966)); see also Basile v. H & R Block, Inc., 777 A.2d 95, 101-02 (Pa. Super. 2001).

The second amended complaint alleges that "Pook & Pook successfully applied to [the bankruptcy court] for possession of and the right to auction the subject items, making it – and all of the Pook Defendants, fiduciaries." See Second Am.Compl. ¶ 43. It continues, "as Court approved fiduciaries – with total control over the Reeses' items to be sold, Pook & Pook and each of the Pook Defendants owed the Reeses – and the Court, the utmost in duty and care."[10] Id. at ¶ 44. I agree that the special function bestowed upon the Pook Defendants by the bankruptcy court came with fiduciary responsibilities to the Reeses and to the court. Certainly, as auctioneers, the Pook Defendants were tasked with the duty of conducting the auction in such a way as to maximize the financial return for the good of the Reeses and the bankruptcy estate. The Reeses reasonably placed their trust in the Pook Defendants. This is the very nature of a fiduciary relationship.

Next, the Reeses must allege that (1) the Pook Defendants negligently or intentionally failed to act in good faith and solely for the benefit of the Reeses in all matters for which they were employed; (2) the Reeses suffered injury; and (3) the Pook Defendants' failure to act solely for the Reeses' benefit was a real factor bringing about the Reeses' injuries. Baker, 440 F.Supp.2d at 414-415 (citing McDermott v. Party City

---

[10] With no factual support, the Reeses suggest that the following common breaches of fiduciary duties are implicated in this action: self-dealing; usurpation of business or corporate opportunity; misappropriation of funds or property; neglect, imprudence, or want of skill; failure to act in another's best interest; misrepresentation/omission as to a statement of fact; inducement; breach of an assumed duty; misuse of confidential information; misuse of superior knowledge; failure to disclose; and aiding and abetting or acting in concert with another. See Second Am.Compl. ¶ 114.

Corp., 11 F.Supp.2d 612, 626 n.18 (E.D. Pa. 1998)); <u>see also</u> <u>Siematic Mobelwerke v.</u>

<u>Siematic Corp.</u>, 2009 U.S. Dist. LEXIS 73683 (E.D. Pa. 2009).

The second amended complaint describes a rather chaotic auction scene with the collectible toys staged in such a way as to deliberately diminish their value. The set-up and display of the toys consisted of unmatched parts of various two and three-part toys in different boxes. Antiques were presented in piles, within cardboard beer flats, on tables, but without any effort to match parts into complete toys. Online bidders and those over the phone did not get a chance to sort through the boxes of mismatched objects. Those bidders could not realize that parts of a complete toy might be spread across several lots. The second amended complaint further indicates that dealers who attended the auction were "stunned by the incompetence, enjoying a feeding frenzy at the Reeses' expense." Only Defendant Lowe, described as "one hungry participant," seemed to know exactly where the best "bargains" were to be had.

The second amended complaint further alleges that two things doomed the sale: (1) the disorganization of the material; and (2) Mr. Lowe and/or the Lowe/Caffarella partnership arranging then picking through the lots for their exclusive benefit – not the benefit of the sellers. One would hope that, as the auctioneers, the Pook Defendants would have ensured that the auction was well-organized and staged to maximize the financial gain for the benefit of the Reeses' and their bankruptcy estate. Utilizing the services of "toy experts" is not in itself negligence, but turning over full responsibility of the auction to those experts, if proven, could at least be considered a negligent failure to

act in good faith and solely for the benefit of the Reeses. That failure to act was a real factor which brought about the Reeses' alleged financial injuries.

Finally, I note that the Reeses' claim for breach of fiduciary duty is not barred by the gist of the action doctrine because the second amended complaint alleges breaches of the defendants' fiduciary duty that reach beyond the particular obligations contained in the contract between the Reeses and Pook & Pook. See Exhibit C of Second Am.Compl. at 31-35. These obligations stem from a "larger social policy" requiring "fair dealing and solicitude from a majority shareholder to minority shareholders in a joint venture." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103-04 (3d Cir. 2001).

Accepting as true the facts alleged as I must at this stage of the proceedings, I find that the Reeses have sufficiently pleaded a claim for a breach of fiduciary duty which the Pook Defendants owed the Reeses. Accordingly, I will deny the Pook Defendants' motion to dismiss Count II.

### F. Count V – Unjust Enrichment

The second amended complaint alleges that "Pook, Caffarella, and Lowe jointly benefited, and continue to benefit, from exploitation Plaintiffs [sic] as outlined above." See Second Am.Compl. ¶ 128. It continues, "Plaintiffs have conferred upon Defendants economic opportunity and actual economic benefit, in the nature of profits resulting from unlawful auction practices and other conduct described above, to the economic detriment of Plaintiffs." Id. at ¶ 129. The Pook Defendants argue that this claim is plainly meritless. I agree.

In Pennsylvania, a claim of unjust enrichment must allege the following elements:

(1) a plaintiff conferred a benefit on a defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc., 885 A.2d 1127, 1137 (Pa. Commw. 2005); see also Torchia v. Torchia, 499 A.2d 581, 582 (Pa.Super. 1985) (noting that "to sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.")  "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." Limbach v. City of Phila., 905 A.2d 567, 577 (Pa. Commw. 2006).  "In order to recover, there must be *both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." Samuels v. Hendricks, 445 A.2d 1273, 1275 (Pa.Super. 1982) (emphasis in original).

As the Pook Defendants properly argue, the Reeses have not alleged that they conferred a benefit upon the Pook Defendants without receiving value in return.  Instead, they have alleged that they entered into a written agreement for the toy auction and received the benefit of $560,000 in sales.  There is no allegation that the Pook Defendants were somehow enriched beyond the amount to which they were entitled in their agreement with the Reeses.  Accordingly, I will grant the Pook Defendants' motion to dismiss Count V, as it relates to them only.

An appropriate Order follows.